## McMullin v. Montgomery County, et al.

Argued February 11, 1972, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*J. Edmund Mullin,* with him *Wisler, Pearlstine, Talone, Craig & Garrity,* for appellant.

*Roger B. Reynolds,* County Solicitor, for appellee, Commissioners.

*Lawrence F. Flick,* with him *Walton Coates,* for appellee, Controller.

OPINION BY JUDGE ROGERS, March 8, 1972:

A compactor being required for use at the County landfill, the Commissioners of Montgomery County employed the independent professional engineering firm which had designed the landfill to develop the specifications for equipment to be devoted to such use. These specifications, accepted by the Commissioners and duly submitted for public bidding, were as follows:

"EQUIPMENT TECHNICAL SPECIFICATION:

"A. COMPACTOR, SANITARY LANDFILL:

"GENERAL: Sanitary Landfill compactors shall be new, heavy duty, diesel powered, articulated all wheel drive with landfill blade, cab and various items described herein. Compactor shall be capable of operating on a 15° slope of incorporated solid wastes.

"QUALITY STANDARD: The sanitary landfill compactors shall be model 825 as manufactured by Caterpiller, Inc., Model K-551 as manufactured by Koehring Road Division, or equal. Unit shall be designed specifically for the service intended. Modifications of units designed for different service and duty will not be acceptable.

"ENGINE: The compactors shall be powered by a diesel engine with a net flywheel horsepower rating of not less than 300 horsepower at 2,060 RPM.

"ELECTRICAL SYSTEM: The unit shall be provided with a 24-volt electrical system with 24-volt 'in seat' direct electric starting.

"OPERATING DATA: *The units shall have a minimum operating weight of 64,000 pounds* with an inside turning radius of 13 feet or less. Axles shall be heavy duty industrial type with planetary reduction at each wheel, arranged for easy servicing. Wheels shall consist of a steel outer drum with welded on feet. The transmission shall be automatic power shift with 3 speeds forward and three in reverse. A heavy duty torque converter shall be included as an integral part of the unit. Articulated joints shall be heavy duty, fully and easily adjustable to compensate for normal wear. Units shall have a separate hydraulic system for operating the blade. The blade control shall be mounted in the cab and all pumps, valves, filters and cylinders shall be mounted for easy accessibility and service. The spreader blade and trash guard shall be of heavy duty construction, U-shaped for maximum refuse handling, and nominally 12 feet in length with trash guard being the standard of the manufacturer. Blade height to top of mouldboard shall be not less than 4' 0".

"Protection shall be provided for the compactor undercarriage by a steel 'belly-pan'. In addition, all hydraulic lines shall be armor-wrapped wherever chafing may occur.

"Hood and side panels of the engine enclosure shall be perforated to permit sufficient cooling air flow to the radiator, but to prevent entry of paper, plastic and other trash. Underside of the engine enclosure shall be protected from trash ingestion by appropriate screening. A hinged radiator guard shall be furnished.

"A fully enclosed, steel operator's cab shall be provided. The cab shall provide adequate room and comfort, shall have easy reach controls and clear vision of

gauges, safety steps, adjustable operator's seat, and complete visibility in all directions. Cab shall be insulated and contain a large capacity heater, air conditioner, blower fan, defroster and electric windshield wipers both front and rear. Four electric operating lights shall be provided on the front and two on the back of the machine for night operation. A heavy duty safety belt and an air horn loud enough to be heard above the normal operating noise shall be installed for the safety of the driver. The doors of the cab shall be easily removable.

"A.   COMPACTION WHEELS:

"1.   The wheels shall be drum type with offset wedges welded to run. Wedges shall be not less than (6) six inches high, and an abrasive resistant grouser bar welded to top of wedge to increase demolition and reduce wear. Minimum ground pressure of 2,000 lbs. per lineal in. of face shall be required, or

"2.   Wheels shall be 51" in diameter, exclusive of compaction-traction grousers and 44½" in width. The compaction-traction grousers shall be welded to each wheel perimeter in two rows of nine each and shall be induction hardened steel, 22" in length and tapered from 1½" thickness at the base to 1" at the tip. Each wheel shall have a liquid ballastable volume of not less than 244 U.S. gallons." (Emphasis added.)

Six bidders submitted proposals with prices ranging from $60,000 to $82,728. The high bid was for a Model 825-B Caterpiller and this equipment was the only offered which met all of the County's specifications. One bidder offered a Model K-551 manufactured by Koehring Road Division but this equipment weighed only 56,400 pounds instead of the 64,000 pounds specified. The low bidder offered a machine called a Hyster Landsaver which did not have a great many of characteristics and capabilities called for in the specifications.

The Commissioners referred the bids to the engineers who, after study, recommended an award to the high bidder as the only one offering equipment meeting all of the specifications. They noted particularly that the K-551 Koehring compactor was deficient in weight and that "inadequate weight [results] in less efficient compaction." The Commissioners, after consulting their solicitor, awarded the contract to the highest bidder.

The instant suit in equity, instituted by a taxpayer of the County, seeks an order which would enjoin the Commissioners from purchasing the Caterpiller compactor from the high bidder and direct them to award the contract of purchase either to the low bidder or to the supplier of the Koehring compactor, on the alleged grounds that the award was improper, illegal and in violation of law. At the trial below, the engineer who drew the specifications testified in detail as to the reasons for each of the operational features specified, including the importance of weight to the efficient performance of compactors in landfills. The chancellor filed an adjudication dismissing the complaint, exceptions to which were dismissed by the court en banc. This resolution of the matter was altogether proper.

The Commissioners' conduct with reference to this purchase is governed by Section 2001 of the Second Class County Code, Act of July 28, 1953, as amended, P. L. 723, 16 P.S. §5001, which provides: "(a) All contracts or purchases in excess of $1500 shall be in writing and . . . shall not be made except with and from the lowest responsible bidder *meeting specifications,* after due notice. . . ." (Emphasis supplied.)

For the Commissioners to have awarded the contract to the low bidder or to the bidder offering the Koehring equipment, neither of whose products conformed to the specifications, and to have rejected the bid offering the only equipment which did meet the specifications, as appellant suggests, would have violated rather than

complied with law. Although the specifications refer to the Koehring Model K-551, as well as the Caterpiller Model 825 under the heading Quality Standard, it is clear from a reading of the entire specifications that the County was primarily interested in acquiring equipment having particular operational features. This is indicated not only by the detailed description of the compactor desired but by general instructions to bidders. For example, under the general heading "Scope of Work", the County declares: ". . . it is the intent of these specifications to obtain equipment suitable for arduous, heavy-duty service in connection with a model solid waste sanitary landfill operation. . . ." Elsewhere the bidders are required to certify that the product offered, including equipment referred to by name as a standard for quality, "will comply in every respect with the specifications." As is not uncommon in this class of case, the complainant misconceives the law to be that public contracts must be let to bidders offering the lowest prices. As the statute plainly provides, the contract must be let to the lowest bidder *meeting the specifications*. This was done here.

The plaintiff did not allege and there is not the slightest hint in this record of fraud, prurience of motive or bad faith on the part of anyone involved.

We deem it unnecessary in this case to expound the general principles of law applicable to the award of public contracts upon advertisement for bids. They have been recently restated in *Weber v. Philadelphia*, 437 Pa. 179, 262 A. 2d 297 (1970). Those here pertinent are (1) that public officers are presumed to act for the public good and (2) that their administrative actions will not be inquired into by the courts unless fraud, collusion or bad faith is indicated. These principles, applied to the facts here, debar plaintiff from relief.

Affirmed.